Chancellor Tames
afterwards delivered the decree of the court.
The object of the bill is for an account and discovery, and to set aside deeds from Sam’l. Adams to Mrs. Kelly.
Adams made his will on 18th August, 1794, and on same day executed a bill of sale to Rebecca Kelly, of his stock of cattle, furniture, &c. also of eleven negroes, and deeds of lease and release of his lands and lots. He died in 1794, possessed of a considerable real and personal estate.
The bill prays that the bills of sale & deeds may be set aside, as fraudulent, and that Smyth should be decreed to account with complainants as creditors of Samuel Adams, The answer and the evidence are detailed in decree.
The defendant Rebecca Kelly states in her answer, that her freedom was given to her in the early part of her life by her master, Mr. Mazyck; that she lived with him in the capacity of house-keeper afterwards; and received from him 60/. per year for her services ; and during the time she lived with him, that she purchased two negroes from him.
That she afterwards lived with Samuel Adams, and carried on for him the business of upholsterer for several years. That for the said services rendered to the said Samuel Adams, and for certain monies lent and advanced by her to him, he became indebted to her for the sums mentioned, as the consideration money in the said bills of sale and the said deeds. That the said bills of sale and the said deeds were executed by him to her, about two months before his death, when he was of sound mind, and that she knows he did also make a will. That A. Duffy took forcible possession of the negroes of the said Samuel Adams after his death, as executor; but that he again delivered up the same to her in consequence of her producing the bills of sale aforesaid.
*218 That she lived on the plantation at the four mile house long before the death of Samuel Adams, and hath always kept possession of the same by herself or tenants. That she never had possession of the lot of land in Charles-t01b but that the same through some defect of title hath ^een ^ost to ^er< That she does not know what property the said Samuel Adams died possessed of, but understands that besides the property mentioned in the said bills of sale and deeds, he died possessed of many hundreds of acres of land in the upper country; the titles for which were in tire hands of a Mr. Gedcles in Charleston.
That the said bills of sale & deeds are fair and bona fide.
The defendant John Smyth in his separate answer, admits that he did qualify as administrator on the estate of Samuel Adams as in bill set forth, and gave security to the Ordinary for 100/. the same being the full value of all the property of Samuel Adams.
That judgment was renewed against him as administrator upon the debt of complainants, but on what ground he knows not. That he has heard S. Adams say he could not live without the assistance of R. Kelly, and that he was greatly indebted to her for monies and property she had advanced to him. That he never reduced into his possession any of the property in the bills of sale or deeds mentioned, nor did he return the same to the ordinary, because he was convinced that the said bills of sale and deeds were fair and bona fide. Were it not for that belief, that he would have endeavoured to obtain possession of said property, as being the greatest creditor of said S. Adams. That he never had any dealings with R. Kelly on account of the estate of said Samuel Adams, and that he never assisted in sending away any negroes of said estate. That he never was but once in the last seven years on the plantation at the four mile house, and that he never received any of the negroes of said estate, or any part of the proceeds of their labor.
Upon the trial, it was proved on the part of complainants by the testimony of Mr. Caldwell, that the property *219 contained in the bills of sale and deeds was all the property which he knew Samuel Adams to be possessed of in his lifetime. Mr. Geddes also proves that if the papers in his possession be grants and.title deeds for lands in the upper country, that they were always ready to be delivered to the administrator. From the testimony of Mr. Mazyck, it further appears that R. Kelly was not very industrious,, was extravagant; and both he and Mr. Denoon agree, that she never could have been possessed of more than 200/. or 300/. at any one time. It also appears from the evidence of several óf the witnesses that S. Adams cohabited with the said R. Kelly, and was very much under, her influence; that she did indeed carry on the upholsterers business on his plantation; but that she was chiefly assisted by his negroes. From the bills of sale and deeds, it is further evident that they and the will are all dated on the same day, and that the will directs payment to be' made of the debts of testator by a sale of his property, while the bills of sale and deeds dispose of the whole property to R. Kelly. That one of the witnesses (Caldwell) leased the plantation at the four mile'house from R., Kelly and John Smyth in 1797, and paid them both in carpenters work. That another witness (Sherewood) leased it from Lemon,’ Smyth’s nephew, as his agent, in 1798, and paid the rent to Smyth.
On the part of the defendant, R, Kelly, it was proved by one witness (Mr. Squib) that Samuel Adams spoke in warm terms of R. Kelly’s industry and good conduct. That she carried on the. business of making mattresses extensively, and sometimes sent to town lOor'12 in a week. That she also sent poultry and pigs to Adams on her own account. That Adams derived more assistance from her-than she did from him; that he would, in the witnesses words, have gone to pieces without her. The same witness also gave in much more testimony in favor of Kelly, which it is needless to recapitulate, as it is not corroborated by the testimony of any other , witness, and is indeed contradicted by Mr. Denoon, one of defendants own wit *220 nesses. The evidence of Mr. Lemon for the defendants goes only to exculpate Smyth the administrator from some ^e charges in the bill, but proves nothing in favor of R. Kelly. The court said that the complainants had contended :
1st. That the bills of sale anddeeds, containing a general ’ , , conveyance ox all S. Adam s property, real and personal, were fraudulent and void.
2d. That the circumstances of the purchaser were entirely inadequate to such a purchase.
3d. That the complainants were judgment creditors of S. Adams, at the time of the date of the bills of sale and deeds, which were voluntary conveyances and void.
4th. That the will of S. Adams, bearing date the same day, and containing clauses repugnant to bills of sale, &c„ he must jiave been non~compos or imposed on.
The defendants contended 1st, that though the considera-, tion was now inadequate, it may have been at the time a full consideration.
2d. That the deeds were dated 18th of Aug. 1794, recorded 27th of Sept.* 1794, which was notice to all the world.
3d. That Duffy, the executor of Adams, and the ordinary, had recognized the claim of Mrs. Kelly, and given up the negroes to her.
The court upon full consideration, is in favor of complainants.
1st. These deeds appear to contain all S. Adam’s property : all the evidence shews that his whole property was conveyed. Therefore according to the rule quoted from Twyne’s case, “ quod dolosus versatur ingeneralibiis ” these deeds have the signs and marks of fraud. See 3 Rep, page 81.
2d. Upon this ground the preponderance of the evidence shews that the circumstances of Rebecca Kelly were at all times inadequate to the making of such a purchase. This being cleaiiy proved, and no money having been shewn to be paid by her, the court may safely presume that this was *221 a voluntary gift without sufficient consideration, and therefore void as to creditors.
3d. The complainants were judgment creditors at the very date of the deeds and will. None of the witnesses have been produced to prove the payment of any money. There are violent presumptions of fraud growing out of all the circumstances. No money applied to pay off Adam’s debts by himself or his executor.
4th. The court is obliged under the circumstances to believe that S. Adams was either non compos, or that unfair dealings were used towards him to induce him to sign the deeds, &c. The will making dispositions different from the deed is dated the same day. The defendants grounds were not supported by any evidence, or was overpowered by the opposite evidence shewing fraud.
Decreed that the bills of sale and deeds-be set aside as voluntary and fraudulent; that the administrator J. Smyth do account before the master for the rent of the plantation atfhe seven mile house for the .years 1797 and 8, (during which he leased it out) and that complainants be permitted to enforce their judgments and executions*.
Costs to be paid by defendant Kelly.